```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
ANTONI JANKOWSKI, *et al.*,

                    Plaintiffs,
                                            **MEMORANDUM AND ORDER**
   -against-                                01-CV-164(KAM)


ROBERT CASTALDI, *et al.*,

                    Defendants.
------------------------------------X
```

**MATSUMOTO, United States District Judge:**

Defendants Robert Castaldi and Castle Restoration and Construction, Inc., (the "defendants"), object to the Report and Determination of Eugene Chmura, Esq., the duly appointed Claims Administrator, filed November 20, 2009, arguing that the Claims Administrator erred in determining that each class member (with one exception) is entitled to recover for the years 1999 and 2000. For the following reasons, the court denies defendants' motion to set aside the Report and Determination, and adopts the Report and Determination, and the calculations contained therein, in their entirety.

## BACKGROUND

More than nine years ago, on January 11, 2001, plaintiff Antoni Jankowski, individually and on behalf of all others similarly situated, (collectively, the "plaintiffs"), brought the instant class action suit for the recovery of unpaid

1

wages, including unpaid overtime, for the period between January 11, 1995 and June 30, 2000.[1] (Doc. No. 1, Compl.) On December 23, 2004, the parties entered into a Stipulation and Order ("12/23/04 Stipulation and Order"), in which, *inter alia*, defendants acknowledged that they did not maintain individual employee timesheets for "longer than a couple of weeks," and that it was "therefore extremely unlikely that a review of [defendants'] records would reveal any such individual timesheets." (Doc. No. 63, 12/23/04 Stipulation and Order at ¶ 6.) The court endorsed the 12/23/04 Stipulation and Order on December 28, 2004. (Doc. No. 67.)

On June 1, 2008, the parties entered into a Stipulation of Class Action Settlement (the "Settlement Agreement") and moved for preliminary approval of the Settlement Agreement on June 6, 2008. (Doc. No. 151.) By Order dated August 6, 2008, the court appointed Eugene Chmura, Esq. ("Claims Administrator") to act as the Claims Administrator for the class, without objection from defendants. (8/6/08 Order; Doc. No. 157.) The parties filed a modified Settlement Agreement on September 12, 2008 (Doc. No. 166), and this court preliminarily approved the Settlement Agreement, as modified, on September 16,

---

[1] The court will not recount the lengthy procedural history of this case. The Report and Determination sets forth the relevant court orders, stipulations, settlement agreements and notices to class members.

2

2008 (Doc. No. 167), along with the accompanying exhibits, as modified (Doc. No. 169), on October 24, 2008. (Doc. No. 170.) All exhibits were incorporated by reference into the Settlement Agreement. (*See* Doc. No. 166, Settlement Agreement at ¶ 8.5.) Included among these exhibits was a modified Notice of Proposed Settlement of Class Action, which set forth the parties' agreement regarding the allocation of the net settlement fund among unnamed, authorized class members and how each class member's claim would be calculated. (Doc. No. 169, Ex. 1, Notice of Proposed Settlement of Class Action.) On March 31, 2009, this court entered a Final Order and Judgment of Dismissal, find that the Settlement Agreement was "fair, reasonable, and adequate to the Class." (Doc. No. 184, Final Order and Judgment of Dismissal at ¶ 6.)

In July and September 2009, after the court approved the Settlement Agreement and the Notice of Proposed Settlement of Class Action, and well after discovery had closed, the defendants, without any explanation as to the circumstances, discovered paystubs for some employees for portions of the years 1999 and 2000, and argued that these paystubs should control the damages for class members.[2] On August 26, 2009, the court ordered each party to submit to the Claims Administrator their

---

[2] Defendants made submissions to this effect to the Claims Administrator on July 24, 2009 and September 10, 2009. (Doc. No. 198, Report and Determination at 4.)

proposed claims calculations using the method that party argued is appropriate and to set forth the reasoning for their calculations. (8/26/09 Order.) The court further ordered the Claims Administrator to make a decision regarding the claims calculations and to set forth the basis for his determination in writing. (*Id.*)

On November 20, 2009, the Claims Administrator filed a Report and Determination on behalf of class members who timely filed their claims on or before the Settlement Notice Date. (Doc. No. 198, Report and Determination.) In the Report and Determination, the Claims Administrator determined that, pursuant to the Notice of Proposed Settlement of Class Action and the 12/23/04 Stipulation and Order, the defendants' electronic payroll data, as provided to plaintiffs as of September 2008, should be afforded presumptive weight in determining the number of weeks each class member worked and, multiplying the number of weeks worked by $16.35 per week, how much of the settlement amount each claimant would receive. (*Id.* at 1-5.) The Claims Administrator refused to consider defendants' newly produced paystubs for the years 1999 and 2000 in his calculation, reasoning that he and the parties were bound by the 12/23/04 Stipulation and Order and the Notice of Proposed Settlement of Class Action, approved as modified on October 24, 2008. (*Id.* at 2-4.)

The Claims Administrator set forth the relevant court orders, stipulations and agreements upon which he based this determination. (*Id.* at 2-3.) Specifically, the Claims Administrator relied on the 12/23/04 Stipulation and Order, which states as follows:

> Defendants hereby certify as follows: (a) prior to mid-2000, it was not Castle's practice to keep individual employee timesheets for longer than a couple of weeks; (b) it is therefore extremely unlikely that a review of Castle's records would reveal any such timesheets; and (c) Castle will not seek to rely at trial on any such individual timesheets for the period prior to mid-2000.

(Doc. No. 63, 12/23/04 Stipulation and Order at ¶ 6.) The parties accordingly stipulated that, for claims prior to mid-2000, plaintiffs' burden of proof at trial would be in accordance with the standard set forth in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) and *Reich v. Southern New England Telecom Corp.*, 121 F. 3d 58 (2d Cir. 1997). (*Id.*) The Claims Administrator also relied on the Notice of Proposed Settlement of Class Action, incorporated by reference into the Settlement Agreement, which sets forth how a class member's settlement payment would be calculated:

> 13(b)(i) Each claimant will receive a payment from the Settlement Fund of Sixteen Dollar and Thirty-Five Cents ($16.35) for each week of actual service, as reflected in the electronic payroll records provided by Castle Restoration & Construction, Inc. for the period January 11, 1995 to June 30, 2000, and for the period July 1, 2000 to June 6, 2008 as reflected by documents and information provided by both the claimants and Defendants. Each claimant's recognized claim shall be calculated

5

> individually based upon the length of employment as reflected in the electronic payroll data of Castle Renovation & Construction, Inc. provided by the Defendants for the period January 11, 1995 to June 30, 2000, and for the period July 1, 2000 to June 6, 2008 as reflected by documents and information provided by both the Claimants and Defendants.
>
> 13(b)(ii) . . . <u>The electronic payroll data</u> of Castle Renovation & Construction, Inc. for the period January 11, 1995 to June 30, 2000, provided by the Defendants, in respect to a Class Member's weeks of employment, <u>shall be given presumptive weight</u>, but Class Members may be awarded amounts based upon <u>greater</u> weeks of employment, if they prove their claims by a preponderance of the evidence to the Claims Administrator . . . provided, that the Claimant, if his identity is established, <u>shall receive, in full</u>, the amount reflected by such electronic payroll records <u>irrespective of whatever other proof may be presented in support of or in opposition to his claim.</u>

(Doc. No. 169, Ex. 1, Notice of Proposed Settlement of Class Action at ¶¶ 13(b)(i) and (ii)) (emphasis added.)

In its objections to the Report and Determination, defendants argue that the Claims Administrator erred in: 1) according presumptive weight to plaintiffs' expert's declaration; and 2) failing to decrease claimants' recovery by the amounts allegedly paid and reflected in paystubs from the years 1999 and 2000. (Doc. No. 199, Defs.' Motion to Set Aside the Claims Administrator's Report and Determination ("Defs.' Objections") at 1-9.)

**DISCUSSION**

**A. The Claim's Administrator's Reliance on the Pannenborg Declaration**

Defendants first argue that the Claims Administrator improperly accorded presumptive weight to the damages calculations of plaintiffs' expert, Glenn Pannenborg, who prepared a class settlement report in 2008 based on defendants' electronic payroll records. (Defs.' Objections at 2-3 & Ex. 1, Decl. of Glenn Pannenborg ("Pannenborg Decl.") at ¶¶ 1-3.) Defendants now assert that Mr. Pannenborg failed to establish a foundation for his expertise in interpreting the electronic payroll data, and contend that the payroll data itself, not Mr. Pannenborg's interpretation of such data, should have presumptive weight, according to the terms of the Notice of Proposed Settlement of Class Action.[3] (Pannenborg Decl. at ¶ 2.)

As Mr. Pannenborg notes in his declaration, defendants admitted that they destroyed all records of hours worked and hourly rates for the period between January 1999 to June 2000. (*Id.* at ¶ 4.) However, after being provided with defendants' electronic payroll records, Mr. Pannenborg was able to extract the hourly rates in binary form, and then to convert that

---

[3] Although, here, defendants argue the expert's report does not abide by the terms of the original settlement agreement, as will be discussed *infra*, defendants also seek to retroactively change the terms of the settlement documents, irrespective of the original agreement between the parties, where such change would be advantageous to them.

information into readable format. (*Id.* at ¶¶ 5-6.) He used this data to prepare a class settlement report, which was used as the basis for the stipulation of settlement entered into by the parties. (*Id.* at ¶¶ 2, 5-6.) Importantly, defendants did not object to Mr. Pannenborg's calculations at any point before the parties entered into settlement. To the contrary, based on defendants' certification that it did not keep individual employee timesheets documenting the number of hours worked and hourly rates of pay, the parties used Mr. Pannenborg's calculations as the baseline of recovery for the Settlement Agreement and accompanying exhibits, including the Notice of Proposed Settlement of Class Action. However, defendants now object to the Claims Administrator's reliance on these calculations, claiming that the electronic payroll records were created using software that is no longer available, that Mr. Pannenborg has not established his expertise in interpreting electronic payroll data, and, therefore, the class members have not proven their claims by a preponderance of the evidence, as required under the parties' agreement. (Doc. No. 199, Defs.'s Objections at 2.)

Despite defendants' sweeping objections, defendants fail to proffer a contrary interpretation of their own electronic records or evidence that that the class members worked fewer weeks than indicated by the electronic records and

8

do not refute the hourly rate data extracted by Mr. Pannenborg. As both parties agreed to use the defendants' electronic records as a baseline for recovery in their Settlement Agreement and accompanying exhibits, and as the defendants have offered no alternative means of interpreting that data, the court finds defendants' objections as to the reliability of Mr. Pannenborg's interpretation of the data to be meritless.  The court therefore concludes that the Claims Administrator did not err by according presumptive weight to the damages calculations of plaintiffs' expert.

**B. The Claim's Administrator's Rejection of the "Newly Found" Paystubs**

Defendants next urge that their recent unexplained discovery of certain paystubs warrants a rejection of the Report and Determination and, presumably, a retroactive modification of the Settlement Agreement whereby plaintiffs are denied recovery for the years 1999 and 2000.  (Defs.' Objections at 1.)  To this end, the defendants argue that the Claims Administrator improperly rejected their proffered "documentary evidence and calculations establishing that overtime was indeed paid for the years 1999 and 2000."  (*Id.* at 3.)

### i.  The 1999 and 2000 Paystubs

In support of its position, defendants attach certain paystubs for the years 1999[4] and 2000,[5] and argue that these newly discovered paystubs are evidence from which the court should infer that defendants paid overtime to all class members for the years 1999 and 2000, and ask the court to reject all class members' claims for those years.  (*Id.* at 3-9.)  They contend that, although the 1999 paystubs fail to delineate between regular and overtime rates of pay, as required by law, their proffered methodology is sufficient to infer the number of overtime hours worked, and therefore paid.  (*Id.* at 4-9.)  Further, they argue that because the 2000 paystubs distinguish between regular and overtime pay, it is clear that defendants began paying overtime wages to all employees as of January 2000.  (*Id.* at 4.)

Plaintiffs counter that the Settlement Agreement is binding on the parties, was properly interpreted by the Claims Administrator and that the newly discovered paystubs, which were

---

[4] The 1999 paystubs list the total amount of pay for the individual pay period; they do not delineate between regular and overtime pay, record the number of hours worked or list the regular or overtime rates of pay.  (Defs.' Objections, Ex. 6.)

[5] The 2000 paystubs, on the other hand, delineate between regular and overtime pay and contain the pay and total number of hours worked.  However, they fail to indicate the regular or overtime rates of pay.  (Defs.' Objections, Ex. 4.)  As plaintiffs note, defendants only attach paystubs for some class members for a limited period of time – specifically, for the dates January 6, 13 and 20, 2000. (*Id.*)

not produced during discovery, do not justify modifying the Settlement Agreement. (Doc. No. 200, Pls.' Response in Opp. to Motion to Set Aside Claims Administrator's Report and Determination ("1/8/10 Letter Br.") at 1-5.) Plaintiffs assert that the 1999 paystubs do not provide any evidence that the class members were paid overtime because they do not distinguish between regular and overtime rates of pay and that the defendants' inferred rate of pay is unreliable. (*Id*. at 4-5.) Plaintiffs further argue that the 2000 paystubs are insufficient to show that the defendants paid overtime to all class members in 2000 because the defendants had a policy of listing overtime hours on paystubs, but paying employees at the regular hourly rate. (*Id.* at 3-5.) Moreover, plaintiffs ask that even if the court accepts these recently produced paystubs as evidence that defendants paid certain class members overtime in 1999 and 2000, that the court only credit defendants for the pay periods listed in the paystubs, and not for the entire two years. (*Id.* at 5.) Plaintiffs finally note that they would need discovery of defendants who, over the nine year life of this litigation, have represented that they destroyed all records of hourly rates and hours worked during January 1999 to June 2000. (*Id.* at 4-5.)

### ii. The Settlement Documents

The terms of the Settlement Agreement were predicated on defendants' certification that it could not locate and did

not maintain individual employee timesheets and payroll data setting forth the rates of pay and the hours worked by each employee for longer than a couple of weeks.  In the absence such evidence, the parties agreed to a method for calculating settlement amounts for claimants, as set forth in the Notice of Proposed Settlement of Class Action.

The Notice of Proposed Settlement of Class Action provides that each claimant will receive $16.35 from the settlement fund for each week of actual service, as reflected in the electronic payroll records provided by defendants for the period between January 11, 1995 and June 30, 2000.  (Doc. No. 169, Ex. 1, Notice of Proposed Settlement of Class Action at ¶ 13(b)(i).)  These electronic payroll records "shall be given presumptive weight," although a claimant may attempt to show he or she is entitled to receive more damages by proving by a preponderance of the evidence that he or she worked more weeks than reflected in defendants' electronic payroll records.  (*Id.* at ¶ 13(b)(ii))(emphasis added.)  Where a claimant attempts to prove such an "excess claim," paystubs or W-2s are to be given presumptive weight.  (*Id.*)  In this circumstance, the claimant carries the burden of proof on the excess claims, provided that the claimant "shall receive, in full, the amount reflected by such electronic payroll records, irrespective of whatever other proof may be presented in support of or in opposition to his

12

claim." (*Id*.) There is no corresponding provision allowing for defendants to offer proof that the claimants are not entitled to recover at all, or that they are entitled to recover less than is reflected in the defendants' electronic payroll records or less than is calculated pursuant to the settlement documents.

### iii. Analysis

The Second Circuit has noted that settlement agreements represent "a compromise between conflicting claims." *Hatalmud v. Spellings*, 505 F.3d 139, 146 (2d Cir. 2007); *see also Berger v. Heckler*, 771 F.2d 1556, 1568 (2d Cir. 1985) (holding a consent decree "represents a compromise between parties who have waived their right to litigation and, in the interest of avoiding the risk and expense of suit, have 'give[n] up something they might have won had they proceeded with the litigation.'" (alterations in original) (internal citation omitted)). "Settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Torres v. Walker*, 356 F.3d 238, 245 (2d Cir. 2004) (quoting *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999) (internal quotation marks omitted)). This applies equally to class settlements as well as to the resolution of litigation between individual parties. *See Dahingo v. Royal Caribbean Cruises, Ltd*., 312 F. Supp. 2d 440, 445 (S.D.N.Y. 2004); *In re Holocaust Victim Assets Litig.*, 256

F. Supp. 2d 150, 152 (E.D.N.Y. 2003). Where the terms of a settlement agreement are unambiguous, "courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." *Red Ball Interior Demolition Corp.*, 173 F.3d at 484. Absent special circumstances, such as a material breach of the agreement or duress, "[i]t is beyond a district judge's discretion to alter the terms of or to refuse to enforce a settlement agreement." *In re Air Crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975*, 687 F.2d 626, 629 (2d Cir. 1982).

Here, the terms of the Settlement Agreement, which this court found to be "fair, reasonable and adequate to the class" (Doc. No. 184, Final Order of Dismissal at ¶ 6), are clear and unambiguous and were the product of good faith, arms-length negotiations that took place over the course of the protracted litigation. (*See, e.g.*, Doc. No. 166, Settlement Agreement, ¶ 8.3 ("The Settling Parties agree that the amount paid to the Settlement Fund and the other terms of the Settlement were negotiated in good faith by the Settling Parties and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.").) Both parties had an equal hand in negotiating and drafting the terms of the Settlement Agreement, Notice of Proposed Settlement of Class

14

Action and relevant exhibits. As the parties acknowledged, the purpose of entering into the Settlement Agreement was to finally resolve the outstanding issues between them, to avoid additional costs and to avoid the risks of trial. (*See, e.g.*, Doc. No. 169, Ex. 1, Notice of Proposed Settlement of Class Action at ¶ 9 ("Defendants have concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in the [Settlement Agreement]."); Doc. No. 166, Settlement Agreement, ¶ 8.3 ("The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them.").) Both parties gave up significant claims in order to settle the matter. (*See,.e.g.*, Pls.' Letter Br. at 4) ("Defendants, for their part, gave up the opportunity to challenge Plaintiff's claims in exchange for not having to pay a much larger amount if Plaintiffs prevailed.")

Here, defendants do not argue that the terms of the Settlement Agreement and accompanying documents are ambiguous, or that the agreements are unenforceable. Further, the defendants do not argue that special circumstances, such as a material breach of the agreement or duress, justify a modification of the Settlement Agreement and accompanying documents. Instead, irrespective of the plain language of these

15

documents, defendants ask the court to change the benefit of the parties' bargain because, after they entered into the Settlement Agreement and accompanying documents, defendants purportedly found missing documentary evidence, previously certified to have been destroyed, from which they argue the court could infer that defendants did, in fact, pay overtime for at least some class members for at least part of the class period. The parties, however, specifically entered into the Settlement Agreement and related documents in order to avoid litigating the issue of, *inter alia*, "whether the proposed members of the Class previously have been paid in full for their employment, including overtime." (Doc. No. 169, Ex. 1, Notice of Proposed Settlement of Class Action at ¶ 3 (acknowledging that the issue of whether defendants paid plaintiff was a hotly contested issue).)[6] For the court to undo the bargained-for Settlement Agreement and relevant exhibits at this juncture offends the notion of the finality of settlement agreements and would add considerably to the cost and length of the litigation.[7]

---

[6] In fact, as the plaintiffs point out, there are allegations that the year 2000 paystubs are "bogus" because defendants had a policy of listing overtime hours in 2000, but only paying at the regular rate. (Pls.' Letter Br. at 5.) Plaintiffs seek discovery on this and other issues if the court accepts defendants' objections.

[7] Indeed, were the court to modify the Settlement Agreement and accompanying documents at this late date to allow for the possible inclusion of the defendants' 1999 and 2000 paystubs in the calculation of recovery, discovery would have to be re-

Thus, without more, the court refuses to accept the newly discovered paystubs as proof of payment and to decrease the class members' recovery accordingly. Although it is possible that refusing to accept the defendants' proffered paystubs may result in some class members recovering more than what defendants believe is appropriate, that is one of the risks that the parties contemplated – and agreed to - when they entered into the Settlement Agreement and related exhibits. Without some showing of special circumstances, the court is powerless to change the terms of the parties' agreement. Defendants' discovery of paystubs close to nine years after the commencement of this action does not constitute such a circumstance.

## CONCLUSION

Defendants' objections to the Claims Administrator's Report and Determination are denied. The court adopts the Report and Determination, and the calculations contained

---

opened and the class members would have to be re-notified. Given the considerable time and effort the parties have expended on this litigation to date, including, *inter alia*, translating documents into the Polish language, publishing notices in Polish language newspapers, providing notice to class members, reviewing claim documents and engaging the Claims Administrator in issues related to his Report and Determination, any overtime funds that defendants seek to avoid paying claimants would be far outweighed by the attorney's fees and costs attendant to re-opening discovery and providing notice to the class. Further, in all likelihood, such fees and costs should be paid by defendants, given that defendants' late discovery of the paystubs precipitated unnecessary delay and expense.

therein, in their entirety.  The parties shall submit a joint status report consistent with this Memorandum and Order via ECF no later than March 18, 2010.

**SO ORDERED.**

Dated   March 12, 2010
        Brooklyn, New York

                                                _____   /s/_____
                                                KIYO A. MATSUMOTO
                                                United States District Judge
                                                Eastern District of New York